UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
RICHARD MICHAEL SHERIDAN,

                    Plaintiff,

      - against -

THE COLLEGE BOARD, CHIARA COLETTI,
JENNIFER TOPIEL and NANCY VIGGIANO,

                    Defendants.
------------------------------------------------------------

ECF case

06 CV 7874

**COMPLAINT and
JURY DEMAND**

        **PLEASE TAKE NOTICE** that Plaintiff Richard Michael Sheridan hereby demands that all papers be served on his attorneys, Alterman & Boop LLP, at the address set forth herein.

        **PLEASE TAKE FURTHER NOTICE** that Plaintiff, by his attorneys, Alterman & Boop LLP, complaining of Defendants, alleges:

### NATURE OF CLAIM

        1.    This action is brought to remedy discrimination on the basis of gender and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, on the basis of age and retaliation pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA") and the New York City Human Rights Law, Administrative Code of the City of New York (the "Code") § 8-101 *et seq.* (the "NYCHRL").

        2.    Plaintiff seeks such damages as may be appropriate pursuant to Title VII, the ADEA and the NYCHRL.

        3.    Plaintiff also seeks costs and attorneys' fees pursuant to the Title VII, the ADEA and the NYCHRL.

        4.    Plaintiff seeks punitive damages as may be appropriate pursuant to Title

VII and the NYCHRL.

5. Plaintiff seeks liquidated damages as may be appropriate pursuant to the ADEA.

## JURISDICTION

6. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 with respect to claims under Title VII and ADEA. The Court has supplemental jurisdiction of this matter pursuant to 28 U.S.C. § 1367(a) with respect to claims under the NYCHRL.

## VENUE

7. This action is properly before this Court as the complained about conduct occurred in the County, City and State of New York.

## ADMINISTRATIVE REQUIREMENTS

8. On or about January 6, 2006, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC").

9. On or about May 25, 2006, Plaintiff amended his previously filed Charge of Discrimination.

10. The EEOC issued a Notice of Right to Sue on or about July 26, 2006 which was received on or about July 28, 2006.

11. This Complaint was timely filed.

## PARTIES

12. Plaintiff Richard Michael Sheridan, a 64 year old Caucasian male, is a resident of the County of Queens, City and State of New York and a former Associate Director of Communications and Public Affairs for Defendant The College Board (the "Board").

13. Upon information and belief, Defendant Board is a domestic corporation with its principal place of business at 45 Columbus Avenue, New York, NY 10023.

14. Upon information and belief, Defendant Board employs more than twenty (20) persons and is an "employer" within the meaning of Title VII, the ADEA and the NYCHRL.

15. Upon information and belief, at all relevant times set forth herein Defendant Chiara Coletti, ("Coletti") a Caucasian woman in her 50's, was a manager of Defendant Board and Plaintiff's third line supervisor.

16. Upon information and belief, at all relevant times set forth herein Defendant Jennifer Topiel, ("Topiel") a Caucasian woman in her 30's, was, commencing in or about November 2004, Plaintiff's second line supervisor and a manager of Defendant Board.

17. Upon information and belief, at all relevant times set forth herein Defendant Nancy Viggiano, ("Viggiano") a Caucasian woman in her 40's, was, commencing in or about November 2004, Plaintiff's immediate supervisor and a manager of Defendant Board.

## FACTS

18. Plaintiff was hired by Defendant Board as Associate Director of Communications and Public Affairs in or about August 2000. His title was changed to that of Associate Director of Communications and Public Affairs in or about spring 2002.

19. During the application process leading to his being hired, Defendant Coletti repeatedly attempted to discover my age by asking me if I had attended high school at the same time as her brother, whose name I did not know.

20. At the time that Plaintiff was hired, the Communications and Public Affairs Department (the "Department") was made up of Defendant Coletti, John Hamill, the former Executive Director who is a Caucasian male presently in his 50's ("Hamill"); Paul Barry, a Caucasian male now in his 40's who headed a separate publishing unit within the Department ("Barry"); Jeffrey Penn who then was a Caucasian male in his late 30's and dealt with the press ("Penn"); Janice Gams, a Caucasian female in her middle age who also dealt with the press

("Gams"); and an office manager and two clerical assistants. A separate Creative Services Department, consisting of about fifty (50) designers, production professionals, etc., also answered to Defendant Coletti.

21. In or about late 2001 or early 2002, Hamill, Barry and Penn left Defendant Board's employ. Subsequently Gams left Defendant Board's employ and Defendant Viggiano became part of the Department's writing staff.

22. In or about 2002, Don Jacob, then Executive Director of Public Affairs, a Caucasian male who is presently in his early 60's, ("Jacob"), was forced to resign after working at the Board for approximately four (4) months. Jacob was not replaced as Executive Director.

23. By or about mid-2002, Plaintiff was one of only two male professionals in the Department, which consisted of ten (10) individuals, and was the oldest member of the Department.

24. In or about late 2002, Defendant Coletti asked Plaintiff to coach Defendant Topiel and another professional in writing skills.

25. For the year beginning July 1, 2003 and ending June 30, 2004, Plaintiff's performance evaluation accurately reflected his contributions to the Board. Specifically, Plaintiff exceeded expectations in six (6) out of thirteen (13) criteria; met expectations in seven (7) out of thirteen criteria; and received a perfect score of 5 in one criteria.

26. This evaluation was generally consistent with Plaintiff's previous evaluations during his tenure at Defendant Board.

27. Plaintiff received his evaluation for the year ending June 30, 2004 in the fall of 2004.

28. At the time Plaintiff received this evaluation he was told by Defendant Coletti that he was the "go to" guy in the Department.

29. In or about November 2004, Defendant Coletti sought to fill the vacant positions of Director and Executive Director of the Department.

30. Based in part on Plaintiff's excellent reviews and his relevant experience, in or about the fall of 2004, Plaintiff should have been at or near the top of the list for promotion to either the position of Director or to the position of Executive Director of the Department.

31. Notwithstanding Plaintiff's excellent relevant credentials and proven record at the Board, in or about November 2004, Defendant Coletti promoted Defendant Viggiano and Defendant Topiel to these positions.

32. Upon information and belief, Defendant Viggiano and Defendant Topiel are younger than Plaintiff.

33. Upon information and belief, neither Defendant Viggiano nor Defendant Topiel had as much relevant experience as Plaintiff and each was less qualified for the position she filled than Plaintiff.

34. Upon information and belief, Defendant Viggiano and/or Defendant Topiel were appointed to the position(s) by Defendant Coletti because they were younger than Plaintiff and/or because they were female.

35. Upon information and belief, Defendant Coletti limited applicants for positions within the Department to young, largely inexperienced females. Upon information and belief, the single male applicant of whom Plaintiff is aware was directed elsewhere by Defendant Coletti who informed Plaintiff that the applicant "would not fit in here".

36. In addition, Defendant Coletti has repeatedly called the senior male executives hired by Board President Gaston Caperton "stale pale males" at public staff meetings at which Plaintiff was present. Like Caperton, Plaintiff is an older Caucasian male.

37. In or about December 2004, Plaintiff complained to Vice President of Human Resources Constance Zalk, ("Zalk"), a Caucasian female who is, upon information and belief, in her 50's, about the promotions of Defendant Topiel and Defendant Viggiano by Defendant Coletti.

38. Plaintiff also asked Zalk about moving to a less biased department. Zalk discouraged Plaintiff from doing so but volunteered to assist him in preparing a new resumé. Zalk's conduct led Plaintiff to believe he was being encouraged to seek employment outside Defendant Board.

39. In retaliation for having complained to Zalk, on or about April 6, 2005, Plaintiff received a warning letter from Defendant Topiel and Defendant Viggiano alleging that his work and conduct had become unprofessional and inappropriate, including, *inter alia*, that he failed to take responsibility for assignments and missed deadlines (the "Warning").

40. Upon information and belief, Defendant Coletti encouraged and/or acquiesced to Defendant Topiel's and Defendant Viggiano's conduct.

41. On or about April 26, 2005, Plaintiff responded to the allegations in the Warning, noting that they were completely unfounded and quoted from his most recent evaluation, which had stated, *inter alia*, that he "[hadn't] missed a deadline in the past year" and that he was "a strong part of the team and . . . the one who makes it a point to lift the spirits of others around him. He is particularly supportive of the younger, less experienced members of the team and extends himself in coaching them."

42. After Plaintiff received the Warning, Plaintiff again complained to Zalk about the discrimination and retaliation he was encountering and again denied the allegations in the Warning.

43. Zalk suggested mediation as a way of resolving the problem and Plaintiff

agreed to take part in that process. However, no mediation ever took place and was never mentioned again.

44. In retaliation for having complained a second time to Zalk, on or about October 27, 2005, Plaintiff received the worst evaluation he had ever received in his 36 year career from Defendant Viggiano.

45. Upon information and belief, Defendant Coletti encouraged and/or acquiesced to Defendant Viggiano's conduct.

46. Additionally, and in further retaliation for having complained to Zalk about the Warning, on or about December 1, 2005, Plaintiff was put on a 90 day probation by Defendant Topiel and Defendant Viggiano. Plaintiff had never before been placed on probation by any employer in his career.

47. Upon information and belief, Defendant Coletti encouraged and/or acquiesced to the decision to place Plaintiff on probation.

48. On or about January 20, 2006, Defendant Board's staff was informed that the position of Senior Web Producer had become available with collegeboard.com in its New York office. Plaintiff was qualified for and applied for the, but was not hired for the position.

49. Upon information and belief, the position was not filled until in or about late April or early May 2006.

50. Plaintiff was not hired for the position in retaliation for his having complained about the discriminatory and retaliatory conduct of Defendant Coletti, Defendant Topiel and Defendant Viggiano.

51. On May 10, 2006, Plaintiff was terminated by Zalk allegedly because "it was time".

52. Defendants' conduct as set forth herein was outrageous and malicious

7

and was intended to, and did, injure Plaintiff.

53. As a direct and proximate consequence of Defendants' conduct, Plaintiff has suffered pecuniary and non-pecuniary losses.

### AS AND FOR A FIRST CAUSE OF ACTION
### DEFENDANT COLLEGE BOARD'S VIOLATIONS OF TITLE VII

54. Defendant College Board's conduct as described constitutes willful discrimination in violation of Title VII.

55. Plaintiff is entitled to damages as a result of Defendant College Board's violation of Title VII.

### AS AND FOR A SECOND CAUSE OF ACTION
### DEFENDANT'S COLLEGE BOARD'S VIOLATIONS OF TITLE VII

56. Defendant College Board's conduct as described constitutes retaliation in violation of Title VII.

57. Plaintiff is entitled to damages as a result of Defendant College Board's violation of Title VII.

### AS AND FOR A THIRD CAUSE OF ACTION
### DEFENDANT COLLEGE BOARD'S VIOLATIONS OF ADEA

58. Defendant College Board's conduct as described constitutes willful discrimination in violation of ADEA.

59. Plaintiff is entitled to damages as a result of Defendant College Board's violation of ADEA.

### AS AND FOR A FOURTH CAUSE OF ACTION
### DEFENDANT'S COLLEGE BOARD'S VIOLATIONS OF ADEA

60. Defendant College Board's conduct as described constitutes retaliation in violation of ADEA.

61. Plaintiff is entitled to damages as a result of Defendant College Board's violation of ADEA.

## AS AND FOR A FIFTH CAUSE OF ACTION
## DEFENDANTS' VIOLATIONS OF THE NYCHRL

62. Defendants' conduct as described constitutes willful discrimination in violation of section 8-107(1)(a) of the NYCHRL.

63. Plaintiff is entitled to damages as a result of Defendants' violation of the NYCHRL.

## AS AND FOR A SIXTH CAUSE OF ACTION
## DEFENDANTS' VIOLATIONS OF THE NYCHRL

64. Defendant College Board's conduct as described constitutes retaliation in violation of the section 8-107(19) of the NYCHRL.

65. Plaintiff is entitled to damages as a result of Defendant College Board's violation of the NYCHRL.

## **PRAYER FOR RELIEF**

66. Plaintiff respectfully prays this Court award him:

   (a) pursuant to Title VII, the ADEA and the NYCHRL, an award of damages, including but not limited to back pay, front pay and all other benefits to which Plaintiff is entitled, with prejudgment interest;

   (b) pursuant to Title VII and the NYCHRL, an award of actual and compensatory damages in an amount to be determined at trial for emotional distress suffered by Plaintiff as a result of Defendants' discriminatory conduct;

   (c) pursuant to Title VII and the NYCHRL, punitive damages in an amount to be determined at trial;

   (d) pursuant to the ADEA, liquidated damages in an amount to be

determined at trial;

      (e)    pursuant to Title VII, the ADEA and the NYCHRL, reasonable attorney's fees and costs of this action; and

      (f)    such other and further relief as this Court deems just and proper.

## JURY DEMAND

**PLEASE TAKE FURTHER NOTICE** that Plaintiff demands a trial by jury.

Dated: New York, New York
September 27, 2006

Respectfully submitted,

ALTERMAN & BOOP LLP

By: _____
DANIEL L. ALTERMAN [DLA0454]
35 Worth Street
New York, NY 10013
(212) 226-2800

Attorneys for Plaintiff

TO:    THE COLLEGE BOARD
45 Columbus Avenue
New York, NY  10023

CHIARA COLETTI
c/o The College Board
45 Columbus Avenue
New York, NY  10023

JENNIFER TOPIEL
c/o The College Board
45 Columbus Avenue
New York, NY  10023

NANCY VIGGIANO
c/o The College Board
45 Columbus Avenue
New York, NY  10023

Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD MICHAEL SHERIDAN,

                            Plaintiff(s),

  - against -

THE COLLEGE BOARD, CHIARA COLETTI, JENNIFER TOPIEL and NANCY VIGGIANO,

                            Defendant(s).

**COMPLAINT AND JURY DEMAND**

ALTERMAN & BOOP LLP

*Attorney(s) for* Plaintiff(s)

Office and Post Office Address, Telephone

35 Worth Street
New York, New York 10013-2935
(212) 226-2800

To

Attorney(s) for

Signature (Rule 130-1.1-a)

_____
Print name beneath

Service of a copy of the within is hereby admitted.

Dated: _____

**PLEASE TAKE NOTICE:**

☐ **NOTICE OF ENTRY**

that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on

☐ **NOTICE OF SETTLEMENT**

that an order
will be presented for settlement to the HON.
within named Court, at
on                          at            M.
Dated,

of which the within is a true copy
one of the judges of the